IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JODI NASH and TONY NASH, | ) | |
| | ) | NO. 4:08-cv-00061-HDV-CFB |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | ON MOTIONS FOR DEFAULT |
| BOOTH AND ASSOCIATES, P.C., | ) | JUDGMENT, DAMAGES AND FEES |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Plaintiffs' Motion for default judgment (Clerk's No. 4), filed April 8, 2008, and Plaintiffs' Motion for Award of Attorney Fees (Clerk's No. 11), filed July 9, 2008. Plaintiffs, Jodi Nash and Tony Nash, allege that Defendant, Booth and Associates, P.C., while attempting to collect payment of a debt owed by Tony Nash, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (1998 ed. & Supp. 2008); the Iowa Debt Collection Practices Act ("IDCPA"), Iowa Code §§ 537.7101-537.7103 (2007); and the Iowa Consumer Credit Code ("ICCC"), Iowa Code § 537.1101-537.8101 (2007). Plaintiffs seek money damages, injunctive relief, and attorney fees.

Plaintiffs filed their Complaint on February 15, 2008; service was made on Defendant on February 25, 2008. Defendant failed to plead or otherwise defend. Under Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court granted Plaintiffs' Motion for Default on April 8, 2008 (Clerk's No. 5).

This matter was referred to the undersigned on May 19, 2008, for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). On July 3, 2008, the Court held a hearing under Federal Rule of Civil Procedure 55(b)(2) to determine the amount of damages. Attorneys Angela Y. Gruber-Gardner and Samuel Z. Marks represented Jodi and Tony Nash. Defendant did not appear at the hearing. After carefully reviewing the evidence and file, the Court finds and recommends as follows on the issues presented.

## I. FINDINGS OF FACT

In 1997 or 1998, Tony Nash, who then was single, bought a bed on credit from Select Comfort. He soon stopped making payments on the debt. Nash testified at the July 3, 2008, hearing that approximately a year after buying the bed, he offered to settle with Select Comfort. Nash testified he never heard back from Select Comfort regarding his settlement offer, and he received no further communications from the company. Select Comfort did not obtain a judgment against Nash.

Select Comfort transferred the collection of Tony Nash's debt to Defendant Booth and Associates, a debt collection agency. Booth and Associates first contacted Nash on January 28, 2008, leaving a message on his home telephone answering machine and requesting he call back regarding "civil litigation." (Tr. at 11.) That night, Nash's wife, Jodi, returned the call and spoke to a Booth and Associates employee, Ms. Williams. Ms. Williams told Jodi Nash about the debt and stated that due to interest, the outstanding debt of $1,200 had increased to $2,000, and must be paid within three days, by January 31. Jodi Nash explained to Ms. Williams that, "there was no way that we could come up with $2,000 at that time," because, "we have a baby, a four-year-old. We live paycheck to paycheck." *Id.* Jodi Nash told Ms. Williams, "We would be more than willing to help with this if we could perhaps settle for an amount, and then when we got our federal refund back, we would be able to pay them." *Id.* at 11-12.

According to Jodi Nash, Ms. Williams said she would see if the debt could be reduced to $900. Ms. Williams then had William Scutter, another Booth and Associates employee, talk with Jodi Nash on the telephone; Ms. Williams represented that Mr. Scutter had authority to approve reducing the debt to $900. Jodi Nash told Mr. Scutter that she and her husband both worked full time, they had a child, they lived paycheck to paycheck, and "there was no way we could come up with that money right away, but we would be more than willing to do whatever we could." *Id.* at 12. Mr. Scutter insisted that the Nashes pay the money by January 31. Jodi Nash became upset and frustrated, and she started to cry.

Tony Nash then took the telephone from his wife and spoke with Mr. Scutter, who demanded that the couple pay the $2,000 by the end of January. He told Mr. Scutter, "there is absolutely no way that we can come up with [$]2,000 in three days. . . . [I]f there's some kind of arrangements we can make, something like that, we might be able to work out something that

way." *Id.* at 4 (alterations added). Mr. Scutter, however, was "very determined that he wanted the [$]2,000 now." *Id.* (alteration added). According to Tony Nash, when he said he could not pay the money in three days, Mr. Scutter said, "Are you f*****g retarded, or what?" *Id.* (alteration added). Mr. Scutter told him that, "[t]hey could file some sort of a judgment or lien . . . on [Tony Nash] . . . like contempt . . . [Tony Nash] could even go to prison for this." *Id.* (alterations added). Tony Nash testified that Mr. Scutter's threats "really upset" him. *Id.* In anger, Tony Nash ended the conversation by hanging up the telephone.

According to Tony Nash, he and Jodi Nash were both upset. Tony Nash testified that his wife, "was afraid that they were going to try to put a lien on our house, try to take our house, because [Mr. Scutter] was saying that he could garnish our wages, he could take our house." *Id.* at 5 (alteration added). Tony Nash called Booth and Associates back and told them that, "if there was no arrangements that could be made, give me an address and I will send you the bed back." *Id.* The company declined his offer because, he testified, "They wanted the cash." *Id.*

After Defendant Booth and Associates initially contacted Tony Nash, the defendant contacted his mother and sister, and one of his former employers, regarding the debt.

Jodi Nash testified that she and her husband applied for a home-equity loan to pay the debt.

Jodi Nash spoke with Ms. Williams the next day, January 29. Ms. Williams told her that the company's lawyer had not yet approved settling the debt for a reduced amount. Jodi Nash said she and her husband had been looking into getting a home-equity loan. She stated, "We were doing whatever we possibly could to get the money to them by the end of the month." *Id.* at 13. According to Jodi Nash, Ms. Williams said that she tried to put a hold on the collection account, but Mr. Scutter "wanted to push it through as fast as he could," because of his confrontation with Tony Nash the previous night. *Id.* Ms. Williams told Jodi Nash that Defendant was going to check with Tony Nash's past and present employers and "do federal and state background checks" on him. *Id.* Based on Ms. Williams' comments, Jodi Nash believed the Defendant was planning to sue both her husband and her.

Jodi Nash testified that approximately a week later, she spoke with Alexia, a Booth and Associates employee, who told her that the amount due had increased to $2,011, because the debt accrued interest at the rate of five percent daily. According to Jodi Nash, Alexia said

Defendant could, “freeze our accounts, garnish our wages or seize our home,” and, “I had to pay $400 by the end of the day,” to prevent Defendant from filing a lawsuit. *Id.* at 14.

The Nashes testified that the collection efforts by Booth and Associates caused them emotional distress. Specifically, Tony Nash stated that as a result of his telephone conversation with Mr. Scutter, he was “very upset,” “angry,” “frustrated,” “scared,” and worried about the company “being able to take our house . . . calling our employers or . . . garnishing our wages.” *Id.* at 6-7. Tony Nash was concerned and thought it was “terrible,” if “this guy can send me to prison for this.” *Id.* at 7. He testified, “Nobody should have to listen to what this guy was saying.” *Id.*

Jodi Nash testified that Defendant’s debt collection activities caused her to feel, “frantic, very scared, and I didn’t know what was going to happen. My stomach was in knots. My heart was racing.” *Id.* at 15. She testified that, “at work I was still a mess. I was trying to research it as much as I could. I lost sleep, tossed and turned.” *Id.*

Although Tony Nash never paid the debt, no legal action was ever taken against him to secure the debt or otherwise collect it.

Tony Nash lost $112.50 in wages when he missed work to attend the July 3, 2008, hearing.

## II. DISCUSSION

### A. Legal Standard for Default Judgment

Whether to grant default judgment is within a court’s discretion. *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). When a defendant is in default under Rule 55(a), the court accepts as true the fact allegations in the complaint, except for the facts relating to the amount of damages. *Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008) (citing *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001)).

Upon default, a court may take “evidence when necessary or by computation from facts of record,” to determine the amount that the plaintiff is entitled to recover and to give judgment accordingly. *Stephenson*, 524 F.3d at 915 (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B);

*Stephenson*, 524 F.3d at 915. After determining the amount of damages, the court may enter judgment pursuant to Rule 55(b)(2). *Stephenson*, 524 F.3d at 916. The plaintiff has the burden to prove uncertain damages to a reasonable degree of certainty. *American Red Cross v. Community Blood Ctr. of the Ozarks*, 257 F.3d 859, 864 (8th Cir. 2001).

With these principles in mind, the Court turns to an examination of the claims that Plaintiffs assert in their Complaint, accepting as true the factual allegations, except for those relating to damages.

**B. Plaintiffs' Claims under the FDCPA**

In the Complaint, Jodi Nash alleges Defendant violated the FDCPA in the following respects: by repeatedly engaging her in conversations with the intent to harass her, in violation of 15 U.S.C. § 1692d(5); by misrepresenting the amount of the debt owed, in violation of § 1692e(2)(A); by misrepresenting the imminence of legal action, in violation of §§ 1692e(2)(A), (5), (10); by threatening to seize her house, freeze her accounts, and garnish her wages when such actions cannot legally be taken and were not intended to be taken, in violation of §§ 1692e(4), (10); and by using unfair or unconscionable means to collect the debt when Defendant tried to collect an amount not authorized by the agreement, in violation of § 1692f.

Tony Nash alleges Defendant violated the FDCPA in the following respects: by contacting his family members in an attempt to collect the debt, telling him that he was "f*****g retarded," (Compl. at 7 (alteration added)), and engaging him in conversation with the intent to annoy, harass and abuse him, in violation of 15 U.S.C. §§ 1692d, (2), (5); by misrepresenting the amount of the debt owed, in violation of § 1692e(2)(A); by misrepresenting the imminence of legal action, in violation of §§ 1692e(2)(A), (5), (10); by implying that he committed a crime when Defendant stated it did state and federal background checks on him, in violation of § 1692e(7); and by using unfair or unconscionable means to collect the debt when Defendant tried to collect an amount not authorized by the agreement, in violation of § 1692f.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Liles v. American Corrective Counseling Serv., Inc.*, 131 F. Supp. 2d 1114, 1118 (S.D. Iowa 2001) (quoting 15 U.S.C. § 1692(e)). The FDCPA

prohibits debt collectors from "making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

For example, § 1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt." Such prohibited conduct includes, but is not limited to, the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," § 1692d(2); and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," § 1692d(5) (alteration added). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 1692d through the profanity and repeated telephone conversations engaged in with intent to annoy, abuse, or harass.

Under § 1692e, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Violations of this section include, but are not limited to, the "false representation of . . . the character, amount, or legal status of any debt," § 1692e(2)(A); the representation or implication that nonpayment of a debt "will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action," § 1692e(4); the "threat to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5); and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 1692e through the false representations as to the amount owed, the consequences of nonpayment of the debt, and the claim as to how interest was accruing.

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," and in addition to this general prohibition of unfair or unconscionable means, the FDCPA specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under

§ 1692f by misrepresentations about the amount of the debt and accruing interest.

The Court respectfully recommends that default judgment be entered on Plaintiffs' claims under the FDCPA.

**C. Plaintiffs' Claims under Iowa Debt Collection Law**

**1. Claims under the IDCPA**

In the Complaint, Jodi Nash alleges Defendant violated the IDCPA in the following respects: by threatening to seize her house, freeze her accounts, and garnish her wages when such actions cannot legally be taken and were not intended to be taken, in violation of Iowa Code § 537.7103(1)(e); by repeatedly engaging her in telephone conversation with the intent to harass her, in violation of § 537.7103(2)(b); by intentionally misrepresenting the amount of the debt and the imminence of legal action, in violation of § 537.7103(4)(e); and by trying to collect an amount not authorized by the agreement, in violation of § 537.7103(5)(d).

Tony Nash alleges Defendant violated the IDCPA in the following respects: by "threatening Tony committed a crime when Defendant stated they would conduct state and federal background checks on him," (Compl. at 8), in violation of Iowa Code § 537.7103(1)(b); by telling Tony he was "f*****g retarded" while attempting to collect a debt and engaging him in telephone conversation with the intent to annoy, harass or abuse him, in violation of §§ 537.7103(2)(a), (b) (Compl. at 7 (alteration added)); by intentionally misrepresenting the amount of the debt and the imminence of legal action, in violation of § 537.7103(4)(e); and by trying to collect an amount not authorized by the agreement, in violation of § 537.7103(5)(d).

Iowa adopted the IDCPA as part of the larger ICCC. *Pub. Fin. Co. v. Van Blaricome*, 324 N.W.2d 716, 724 (Iowa 1982). When interpreting provisions of the IDCPA, Iowa courts look to federal courts' interpretation of the analogous FDCPA provisions. *Id.* at 724-25; *see Liles*, 131 F. Supp. 2d at 1120 (citing *Public Finance*). The IDCPA provides consumers with a cause of action against a debt collector who has violated provisions relating to several sections of the ICCC, including § 537.7103. IOWA CODE § 537.5201(1)(y).

Section 537.7103(1) prohibits a debt collector from collecting or attempting to collect a debt by means of an "illegal threat, coercion or attempt to coerce." The phrase can mean various actions, including the "false accusation or threat to falsely accuse a person of fraud or any other crime," § 537.7103(1)(b), and the "false threat that nonpayment of the debt may result in the

arrest of a person or the seizure, garnishment, attachment or sale of property or wages of that person," § 537.7103(1)(e). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 537.7103(1) by threatening foreclosure on their home, and jail for Tony Nash.

Section 537.7103(2) states that a debt collector "shall not oppress, harass or abuse a person in connection with the collection or attempted collection of a debt of that person or another person." The section identifies oppressive, harassing or abusive conduct as including the "use of profane or obscene language or language that is intended to abuse a hearer or reader and which by its utterance would tend to incite an immediate breach of the peace." § 537.7103(2)(a). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 537.7103(2) by use of profanity and harassing telephone conversations.

Section 537.7103(4) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation or means to collect or attempt to collect a debt or to obtain information concerning debtors." The section identifies several types of conduct that are fraudulent, deceptive, or misleading, including an "intentional misrepresentation, or a representation which tends to create a false impression of the character, extent or amount of the debt, or its status in a legal proceeding." § 537.7103(4)(e). The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 537.7103(4) by representations about accrual of interest and about legal proceedings relating to nonpayment of the debt.

Section 537.7103(5)(d) provides that a debt collector shall not collect, or attempt to collect, "interest or other charge, fee or expense incidental to the principal obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor, or is otherwise legally chargeable." The Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 537.7103(5) by representations about the accrual of interest on the debt.

For these reasons, the Court respectfully recommends that default judgment be entered on Plaintiffs' claims under the IDCPA.

**2. Claims under the ICCC**

Jodi Nash and Tony Nash next allege that Defendant violated the ICCC, specifically Iowa Code § 537.5108(2), by engaging in unconscionable conduct in an attempt to collect the

debt when "Defendant violated the [FDCPA and IDCPA] as stated above." (Compl. at 7-8.)

The ICCC governs all consumer transactions in Iowa, including collection or enforcement of transactions. *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1052 (S.D. Iowa 2007) (citing *Midwest Check Cashing, Inc. v. Richey*, 728 N.W.2d 396, 399 (Iowa 2007) (quoting Iowa Code § 537.1201(1)(c)). Iowa patterned the ICCC on the Uniform Consumer Credit Code, and enacted the statute to "protect consumers in relatively small credit transactions." *Id.* (quoting *Equilease Corp. v. Smith*, 405 N.W.2d 803, 805 (Iowa 1987)). Iowa courts construe and apply the ICCC liberally to "[p]rotect consumers against unfair practices by . . . collectors of consumer credit." *Id.* (quoting Iowa Code § 537.1102(1), (2)(d)).

Jodi Nash and Tony Nash claim that Defendant's actions were unconscionable in violation of § 537.5108(2), which provides in part as follows:

> With respect to a consumer transaction . . . if the court as a matter of law finds . . . that a person has engaged in, is engaging in, or is likely to engage in unconscionable conduct in collecting a debt arising from that transaction, the court may grant an injunction and award the consumer any actual damages the consumer sustained.

IOWA CODE § 537.5108(2). The ICCC states that, "[i]n applying subsection 2, violations of section 537.7103 shall be considered, among other factors, as applicable." IOWA CODE § 537.5108(5). In addition to considering § 537.7103 violations in applying § 537.5108(2), "Iowa courts have considered as factors unfair surprise, lack of notice, disparity of bargaining power and substantive unfairness." *Hogue*, 494 F. Supp. 2d at 1052 (quoting *Besta v. Beneficial Loan Co. of Iowa*, 855 F.2d 532, 535 (8th Cir. 1988)).

Here, the Court finds that Defendant violated Jodi Nash's and Tony Nash's rights under § 537.5108(2) by engaging in unconscionable conduct in relation to the content of telephone conversations with Jodi Nash, Tony Nash, and Tony Nash's relatives; the use of threats and profanity; and misrepresenting the legal consequences of nonpayment of the debt. The Court, therefore, respectfully recommends that default judgment be entered on Plaintiffs' claims under the ICCC.

**D. Remedies**

Plaintiffs request money damages under the FDCPA and IDCPA, injunctive relief under the ICCC, and attorney fees.

**1. Money Damages under the FDCPA**

The FDCPA states as follows:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –
> (1) any actual damage sustained by such a person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . . .

15 U.S.C. § 1692k(a)(1), (2)(A).

**a. Actual Damages under § 1692k(a)(1)**

Jodi Nash and Tony Nash each seek actual damages under the FDCPA for emotional distress each suffered as a result of Defendant's actions. Tony Nash also seeks actual damages to compensate him for $112.50 in lost wages incurred when he attended the July 3, 2008, hearing. At the hearing, Jodi Nash requested $5,000 for actual damages, and Tony Nash requested $5,000 for actual damages.

An emotional distress claim "must be supported by competent evidence of genuine injury." *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 891 (8th Cir. 2008) (quoting *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1097 (8th Cir. 2007)). A plaintiff's own testimony can be sufficient to support a finding of emotional distress; medical evidence is unnecessary. *Id.* A plaintiff must offer specific facts concerning the nature of his claimed emotional distress and the causal connection to the alleged violations. *Christensen*, 481 F.3d at 1097 (affirming the jury's emotional damages award in employment discrimination case based on the plaintiff's and his spouse's testimony that the plaintiff experienced significant stress after not being hired, he was distraught and withdrawn, he was upset at not being the breadwinner, he cried and felt stress during the ensuing ten month job search, and he was still distressed after finding new work because it was not as fulfilling as his previous job).

Based on Jodi Nash's and Tony Nash's testimony, the undersigned respectfully recommends that Jodi Nash be awarded $1,000 in actual damages for emotional distress caused by the defendant's unconscionable conduct, and that Tony Nash be awarded $1,000 in actual damages for emotional distress caused by the defendant's unconscionable conduct and for his lost wages.

**b. Statutory Damages under § 1692k(a)(2)(A)**

Plaintiffs each seek the maximum $1,000 damage amount provided under § 1692k(a)(2)(A). In assessing statutory damages under § 1692k(a)(2)(A), a court considers, among other relevant factors, the following: (1) the frequency and persistence of the debt collector's noncompliance; (2) the nature of the noncompliance; and (3) the extent to which the noncompliance was intentional. § 1692k(b)(1); *Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 993 (8th Cir. 2005).

Having considered the above factors in relation to the facts of this case, the Court respectfully recommends awarding Jodi Nash $500 in statutory damages, and Tony Nash $500 in statutory damages under the FDCPA based on the persistent and intentional nature of Defendant's noncompliance, including, but not limited to, the misrepresentations made about the legal consequences of nonpayment of the debt.

**2. Money Damages and Injunctive Relief under the ICCC and the IDCPA**

In their Complaint, Jodi Nash and Tony Nash request actual damages, penalty damages, and injunctive relief under Iowa debt collection law.

Under Iowa law, a consumer has "a cause of action to recover actual damages and in addition . . . a penalty in an amount determined by the court, but not less than one hundred dollars nor more than one thousand dollars," for violations of the ICCC and the IDCPA. IOWA CODE § 537.5201(1). In addition, the ICCC provides that if a court finds "a person has engaged in, is engaging in, or is likely to engage in unconscionable conduct in collecting a debt arising from that transaction, the court may grant an injunction and award the consumer any actual damages the consumer sustained." IOWA CODE § 537.5108(2).

Plaintiffs' claims under Iowa debt collection law are not preempted by their claims under the FDCPA. *See generally Chiverton v. Federal Fin. Group, Inc.*, 399 F. Supp. 2d 96, 102 (D. Conn. 2005) (recommending an award of $1,000 in statutory damages under the FDCPA, and an award of $7,500 in punitive damages under Connecticut Unfair Trade Practices Act); *Mann v. Acclaim Fin. Serv., Co.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004) (holding that consumer debtor was entitled to the maximum statutory awards of $1,000 under the FDCPA and $200 under Ohio's Consumer Sales Practices Act); *Liles*, 131 F. Supp. 2d at 1119-20 (holding that genuine issues of material fact existed as to whether private company that sought to collect

"fees" from checkwriters in connection with dishonored checks was debt collector subject to requirements of the FDCPA and IDCPA, precluding summary judgment for company on claims under the FDCPA and IDCPA); 15 U.S.C. § 1692n (stating the FDCPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent" with FDCPA, and then "only to the extent of the inconsistency"); Sara J. Sersland, Note, *A Choice of Remedies for the Credit Consumer - The Federal "Fair Collection Practices Act" and the "Iowa Debt Collection Practices Act*," 27 DRAKE L. REV. 489, 499-500 (1977-78) (discussing effect of preemption doctrine on the probable effect of the FDCPA on state law).

Section 537.5108(7) states, "The remedies of this section are in addition to remedies otherwise available for the same conduct under law other than this chapter, but no double recovery of actual damages may be had." Having recommended awarding actual damages to Plaintiffs under the FDCPA, the Court declines to recommend awarding a double recovery of actual damages by awarding actual damages under Iowa debt collection law. *See* IOWA CODE § 537.5108(7).

Plaintiffs each request an award of $1,000 in penalty damages under § 537.5201(1). When, as here, a consumer is entitled to bring a civil action under § 537.5201(1), the court may assess the statutory penalty, even though no actual damages are awarded. *Public Finance*, 324 N.W.2d at 725 (cited in *Riker-Vanholland v. Transouth Fin. Corp.*, No. CO4-4009-MWB 2004, WL 1812739, *6 (N.D. Iowa Aug. 13, 2004)). By use of the word "penalty," the Iowa legislature emphasized "the abusive actions of the debt collector that must be checked if the purpose of the statute is to be effectuated." *Id.* In assessing the amount of the penalty, a court "may consider the frequency or persistence of the violations." *Id.* at 726.

Having considered the above factors, the Court respectfully recommends awarding Jodi Nash $500 in statutory damages, and awarding Tony Nash $500 in statutory damages under § 537.5201(1).

The Court further respectfully recommends granting injunctive relief under § 537.5108(2), and ordering that Defendant shall not engage in unconscionable conduct toward Plaintiffs in collecting the debt at issue.

**E. Attorney's Fees**

Plaintiffs seek recovery of reasonable attorney's fees and costs. (Clerk's No. 11.) The FDCPA, IDCPA, and ICCC all provide for an award of reasonable attorney's fees. *See* 15 U.S.C. § 1692k(a)(3); IOWA CODE §§ 537.5108(6), 537.5201(8).

Plaintiffs ask for $2,240.00 in attorney's fees and $385.00 in costs, for a total of $2,625.00. The Court has reviewed Plaintiffs' counsel's affidavit and itemized statement. The Court finds the requested award reasonable.

The Court respectfully recommends that Plaintiffs be awarded $2,240.00 in attorney's fees and $385.00 in costs, for a total of $2,625.00 for attorney's fees and costs.

## III. RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, under 28 U.S.C. § 636(b)(1)(B), that Plaintiffs' Motion for default judgment (Clerk's No. 4) be granted and default judgment be entered pursuant to Federal Rule of Civil Procedure 55 (b)(2) on Plaintiff Jodi Nash's and Plaintiff Tony Nash's claims under the FDCPA, IDCPA, and ICCC.

The Court respectfully recommends that Plaintiff Jodi Nash be awarded damages totaling $2,000 ($1,000 in actual damages under the FDCPA, $500 in statutory damages under the FDCPA, and $500 in punitive damages under Iowa Code § 537.5201(1)).

The Court respectfully recommends that Plaintiff Tony Nash be awarded damages totaling $2,000 ($1,000 in actual damages under the FDCPA, $500 in statutory damages under the FDCPA, and $500 in punitive damages under Iowa Code § 537.5201(1)).

The Court respectfully recommends that Plaintiffs' request for injunctive relief under Iowa Code § 537.5108(2) be granted, and that Defendant be ordered not to engage in unconscionable conduct toward Plaintiffs in collecting the debt at issue.

The Court respectfully recommends that Plaintiffs' Motion for Award of Attorney Fees (Clerk's No. 11) be granted, and Plaintiffs be awarded $2,240.00 in attorney's fees and $385.00 in costs.

IT IS ORDERED that the parties have until November 6, 2008, to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F.

Supp. 1269, 1276 (E.D. Mo. 1997). The Court will freely grant such extensions. Any objections filed must identify the specific portion of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 15th day October, 2008.

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE